UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE PAZOS, JR.,                    )    NO. CV 08-6882-CT
                                   )
            Plaintiff,             )    OPINION AND ORDER
                                   )
      v.                           )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of                    )
Social Security,                   )
                                   )
                                   )
            Defendant.             )
_____)

      For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

                        SUMMARY OF PROCEEDINGS

      On October 20, 2008, plaintiff, Jose Pazos, Jr., filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On January 21, 2009, plaintiff filed a memorandum in support of plaintiff's complaint. On March 20, 2009, the Commissioner filed a brief in opposition. On March 27, 2009, plaintiff filed a reply.

1 | <u>SUMMARY OF ADMINISTRATIVE RECORD</u>

2 |    1.   <u>Proceedings</u>

3 |    Plaintiff, who has been represented by current counsel through both

4 | this and the prior administrative proceeding, previously received a

5 | closed period[1] of Disability Insurance Benefits ("DIB") from January 28,

6 | 2002, through January 31, 2005, due to a right rotator cuff tear and

7 | subsequent corrective surgery.  (<u>See</u> TR 4, 40-47.)[2]  The award was

8 | entered after an October 4, 2006, hearing before an administrative law

9 | judge ("ALJ").  At that hearing, plaintiff stipulated to several of the

10 | ALJ's findings, including:  that his shoulder injury had improved as of

11 | February 1, 2005; that after that date he could perform "at least" light

12 | work; and that as of February 1, 2005, he was "able to perform a

13 | significant number of jobs."  (TR 47-48.)  Plaintiff did not seek review

14 | of that decision and, accordingly, it remains final.[3]

15 |    Now, however, apparently dissatisfied with the closed period of

16 | benefits and notwithstanding his stipulations, plaintiff contends that

---

[1] "'In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.'" <u>Mendoza v. Apfel</u>, 88 F.Supp. 2d 1108, 112 (C.D.Cal. 2000)(quoting <u>Pickett v. Bowen</u>, 833 F.2d 288, 289 n. 1 (11th Cir.1987)).

[2] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

[3] The written decision of the ALJ in plaintiff's prior proceedings is attached as exhibit 1 to this opinion and order. It is referred throughout as the "prior order." The court notes that an apparent photocopy error obscures the first part of the final sentence on page 4 of the prior order, which is located at page 43 of the record of the administrative proceedings. That sentence is immaterial to the issues presented here.

2

1  he was in fact disabled all along.

2      On February 1, 2007, plaintiff filed applications for Title II

3  benefits, disability insurance benefits and Supplemental Security Income

4  ("SSI"), alleging that, notwithstanding his October 2006 stipulation

5  that he was no longer disabled and was at that time able to perform

6  "significant numbers of jobs in the national economy," he has been

7  disabled since February 1, 2005.  He further contends that a January

8  2007 ankle injury has exacerbated his disability.  (TR 84-100.)  The

9  application was denied initially and upon reconsideration.  (TR 56-60,

10  62-66.)

11      On August 16, 2007, plaintiff filed a request for a hearing before

12  an ALJ.  (TR 67.)  On February 25, 2008, plaintiff, counseled and

13  accompanied by an interpreter, appeared and testified before an ALJ.

14  (TR 16-33.)  The ALJ also considered vocational expert ("VE") testimony.

15  On March 27, 2008, the ALJ issued a decision that plaintiff was not

16  disabled as defined by the Act and thus was not eligible for benefits.

17  (TR 4-13.)  On April 1, 2008, plaintiff filed a request with the Social

18  Security Appeals Council to review the ALJ's decision.  (TR 14.)  On

19  April 3, 2008, the request was denied.  (TR 14-15.)  Accordingly, the

20  ALJ's decision stands as the final decision of the Commissioner.

21  Plaintiff subsequently sought judicial review in this court.

22      2.   Summary Of The Evidence

23      Except as otherwise noted, the current ALJ's decision, attached as

24  exhibit 2 to this opinion and order, and the prior order (Ex. 1)

25  materially summarize the evidence in the case.

26  //

27  //

28

1

PLAINTIFF'S CONTENTIONS

2
Plaintiff essentially contends that:

3
1.  The ALJ erroneously failed to credit plaintiff's statements

4
regarding his shoulder injury and a new left ankle injury; and,

5
2.  The ALJ misread the prior order's residual functional capacity

6
("RFC") assessment[4], to which he gave res judicata effect and which

7
he presented to the VE, thus invalidating the VE's conclusion that

8
significant numbers of jobs exist that plaintiff can perform.

9

STANDARD OF REVIEW

10
Under 42 U.S.C. §405(g), this court reviews the Commissioner's

11
decision to determine if: (1) the Commissioner's findings are supported

12
by substantial evidence; and, (2) the Commissioner used proper legal

13
standards.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

14
Substantial evidence means "more than a mere scintilla," Richardson v.

15
Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

16
Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

17
When the evidence can reasonably support either affirming or

18
reversing the Commissioner's conclusion, however, the Court may not

19
substitute its judgment for that of the Commissioner.  Flaten v. Sec'y

20
of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

21

DISCUSSION

22
1.  The Sequential Evaluation

23
A person is "disabled" for the purpose of receiving social security

24
benefits if he or she is unable to "engage in any substantial gainful

25

26
    [4]  The RFC is the most an individual can still do after
considering the effects of physical and/or mental limitations
that affect the ability to perform work-related tasks. 20 C.F.R.
§§ 409.1545, 416.945.

27

28

4

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

//

//

5

1    2.   <u>Issues</u>

2         A.   <u>Plaintiff's Credibility</u>

3    The current ALJ found that the prior order should be given res

4    judicata effect under Acquiescence Ruling 97-4(9), which requires

5    adjudicators confronted with a prior final determination of non-

6    disability to apply "a presumption of continuing non-disability . . .

7    unless the [plaintiff] rebuts that presumption." A.R. 97-4(9)(Dec. 3,

8    1997).

9         A plaintiff may rebut the presumption of continued non-disability

10   by showing "changed circumstances." Id. This means the plaintiff must

11   show an increase in the severity of an existing impairment or

12   impairments, or the existence of a new impairment or impairments not

13   previously considered. Id.

14        The current ALJ found plaintiff did not establish that his

15   circumstances had changed—i.e., that he had a new cognizable disability

16   or that his old injury had worsened—since February 1, 2005, the date

17   after which the prior disability period was deemed closed and concluded

18   that plaintiff is not disabled. (TR 8, 13.)

19        Plaintiff claims this finding is erroneous because the ALJ

20   improperly rejected his subjective statements that his right rotator

21   cuff "still" hurts and that a new left ankle injury is severe.[5]

22   _____

23        [5] Plaintiff also suggests that it was improper for the ALJ
     to give res judicata effect to the prior order because the
24   decision included these stipulations by the plaintiff-i.e., that
     this was not a finding on the "merits." This is incorrect.
25   However, a careful review of the prior order indicates that the
     ALJ's findings were well-reasoned and based upon medical evidence
26   and plaintiff's testimony, and that plaintiff agreed with them.
     Indeed, the prior ALJ "scrutinized the record" for reasons to
27   discount the conclusion of a state agency physician that

28                                      6

1    A plaintiff's symptom testimony is evaluated under a two-step

2 analysis.   First, the plaintiff must "produce medical evidence of an

3 underlying impairment which is reasonably likely to be the cause of the

4 alleged pain."  Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

5 Once the plaintiff produces this evidence, the medical findings need not

6 support the severity of the symptoms, and the ALJ may not discredit the

7 plaintiff's allegations of the severity of the pain solely on the ground

8 that the allegations are unsupported by objective medical evidence.  Id.

9 at 346-47.

10    The ALJ may reject a plaintiff's subjective testimony regarding the

11 extent of symptoms only for "clear and convincing" reasons.  Lester v.

12 Chater, 81 F.3d at 834.   In evaluating the credibility of a plaintiff's

13 symptom testimony, the ALJ may employ ordinary techniques of credibility

14 evaluation,  by  considering  such  evidence  as  prior  inconsistent

15 statements regarding symptoms, testimony that appears less than candid,

16 unexplained or inadequately explained failure to seek treatment or to

17 follow  a  prescribed  course  of  treatment,  and  plaintiff's  daily

18 activities.   Smolen v. Chater, 80 F.3d at 1281. A plaintiff's lack of

19 self-reporting to physicians about the extent of his symptoms as alleged

20 before the Commissioner, particularly when coupled with other evidence

21 that  contradicts  plaintiff's  subjective  complaints,  is  a  clear  and

22 convincing reason to find the plaintiff not to be credible.  Connet v.

23 Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (ALJ properly rejected

24 plaintiff's testimony in part because she never reported the alleged

26 plaintiff was not disabled.  He ultimately adopted plaintiff's
account of his symptoms in finding a narrower RFC than the
27 physician proposed and concluded plaintiff was disabled for the
closed period.  (See, e.g., TR 45.)

1 | restriction to a physician).

2 |     If "ALJ's credibility finding is supported by substantial evidence
3 | in the record, [the court] may not engage in second guessing." Thomas v.
4 | Barnhart, 278 F.3d 957, 958 (9th Cir. 2002)(citation omitted).

5 |          i.   Plaintiff's left ankle fracture

6 |     Plaintiff fell and fractured his left ankle in mid-January 2007.
7 | (TR 24, 224.)  He sought disability for the injury approximately two
8 | weeks later, on February 1, 2007.  (TR 4.)  The record indicates
9 | plaintiff wore a boot for approximately three months.  (TR 24.)  He
10 | testified in February 2008 that he continued to have ankle pain and that
11 | if he stood or walked for "a long period of time" it would swell.  (TR
12 | 25.)  He stated, too, that the ankle starts "itching" after he stands
13 | for about 15 to 20 minutes.  (Id.)

14 |     The ALJ concluded plaintiff's statements were "not entirely
15 | credible" and that the ankle injury did not persist for twelve
16 | consecutive months.  (TR 9-10.)

17 |     The ALJ set out the following clear and convincing reasons which
18 | are supported by the record.  By seeking benefits here due to
19 | disabilities beginning on February 1, 2005, plaintiff has contradicted
20 | his stipulation in October 2006, that he was not disabled after February
21 | 1, 2005.  (See TR 8, 47-48); Smolen v. Chater, 80 F.3d at 1281 (prior
22 | inconsistent statements may be considered).  The ALJ noted that a state-
23 | agency reviewing physician concluded the ankle was not expected to be
24 | severe for twelve months.  (TR 7, 10, 206.)  The ALJ noted that in May
25 | 2007, an examining orthopedist described the fracture to plaintiff's
26 | ankle as "stable."  (TR 7, 10, 190.)  The ALJ found no evidence that
27 | plaintiff returned to the clinic at which he sought treatment for

28 |

1 prescribed follow-up care.  (TR 7, 10.)  The ALJ pointed out that, while
2 plaintiff contends he could not afford medical care, he did, in fact,
3 return to his treating clinic on two separate occasions in the summer of
4 2007, seeking treatment for rash and itch; at neither appointment did he
5 complain of or seek treatment for left ankle pain, and the treating
6 physicians noted no abnormalities of plaintiff's ankle at those
7 appointments.  (TR 8, 10, 217-22.)  Furthermore, the ALJ noted that when
8 plaintiff ultimately returned for treatment of the ankle and an
9 unrelated personal concern in November 2007, the examining physicians
10 noted no abnormalities in the ankle.  (TR 8, 10, 213.)  Indeed, the ALJ
11 pointed out, while the ankle was said to be "tender," no swelling was
12 found, plaintiff stated that he had left ankle pain only "on and off,"
13 and the x-ray taken of the ankle indicated that it was "normal." (TR 8,
14 10, 213, 231.)

15     Accordingly, the ALJ's credibility determination is supported by
16 substantial evidence in the record and free from material legal error.

17                 ii.   Plaintiff's right rotator-cuff tear

18     Plaintiff contends the ALJ also failed to credit his testimony
19 regarding the shoulder injury that he stipulated in October 2006 was no
20 longer disabling.  Specifically, plaintiff stated that this condition
21 "did not improve."  (TR 84-100), that he is "still" having shoulder
22 problems (TR 24), and that he was offered and turned down additional
23 surgery.  (Id.)  These statements do not, in themselves, suggest that
24 the injury increased in severity, as plaintiff must show to rebut the
25 presumption of continued non-disability.

26     In any event, the ALJ concluded that even these statements were not
27 entirely credible based on clear and convincing evidence of record.

28

Again, by seeking benefits here due to this shoulder injury beginning effective February 1, 2005, plaintiff has contradicted the stipulation he entered into in October 2006 that this injury was no longer disabling after February 1, 2005. (<u>See</u> TR 8, 47-48); <u>Smolen v. Chater</u>, 80 F.3d at 1281 (prior inconsistent statements may be considered). The ALJ pointed out that plaintiff "appears to overstate his symptoms and limitations" (TR 10), and pointed out that there was no evidence that further surgery was ever recommended. (TR 8, 10.) The ALJ noted that the most recent shoulder x-ray revealed no abnormalities, i.e., it revealed a "normal right shoulder." (TR 9, 10, 182.) The ALJ found no evidence that plaintiff had been referred for further diagnostic testing. (TR 9, 10.) The ALJ further found plaintiff has not consistently complained of shoulder pain on those occasions when he did seek medical treatment. (TR 9, 10, 158-83, 209-36.)

Accordingly, the credibility decision is supported by substantial evidence in the record and free from material legal error.

B. <u>Application of the prior ALJ's RFC and the validity of the VE testimony</u>

Even assuming that plaintiff had effectively rebutted the presumption of continued non-disability by showing changed circumstances, which is not the case, an ALJ must nonetheless give preclusive effect to a prior ALJ's RFC finding absent "new and material evidence" relating to that finding. A.R. 97-4(9).

Plaintiff contends that the VE's conclusion here, that there are significant numbers of jobs he can perform in the national economy, is invalid because the ALJ misrepresented to the VE the prior order's RFC assessment.

10

The ALJ here instructed the VE to consider a plaintiff with an assessed RFC to perform "at least light work." Although this precisely mirrors the RFC finding of the prior order (TR 47), plaintiff essentially contends that, while the RFC finding of the prior order states "at least a range of light work," the order actually found plaintiff capable of <u>less</u> than a range of light work, limited by plaintiff's alleged inability to use his upper extremities freely.

Plaintiff points to two paragraphs in the prior order in support of this contention. First, in concluding plaintiff could not perform his past relevant work of machinist, finding no. 16 of the prior order states that "plaintiff remains unable to perform medium work or work requiring use of both upper extremities more than occasionally." (TR 87.) Second, in concluding plaintiff is able to perform a significant number of jobs in the national economy, finding no. 18 of the prior order states that:

> Beginning on February 1, 2005, if the [plaintiff] had the residual functional capacity to perform the full range of light work, considering the [plaintiff's] age, education, and work experience, a finding of 'not disabled' would be directed by the Medical-Vocational Rule 202.18. However, the additional limitations have little or no effect on the occupational base of unskilled medium work. A finding of 'not disabled' is therefore appropriate under the framework of this rule. The [plaintiff] has stipulated that he is able to perform a significant number of jobs.[6]

---

[6] To the extent plaintiff suggests he did not, in fact, stipulate in his prior hearing that he was able to perform a significant number of jobs, his contention is unavailing. Plaintiff did not challenge the prior order previously, and he

11

(TR 48.)

Plaintiff suggests the reference to "unskilled medium work" in finding no. 18, when viewed in light of the statement that plaintiff "remains unable" to use both upper extremities fully at all times in finding no. 16, is a typographical error and that the prior ALJ intended to conclude the shoulder injury imposed additional functional limitations on plaintiff's ability to perform "light" work.  This is not supported by the plain language of the prior order.

Accordingly, the ALJ's hypothetical to the VE, even assuming it was necessary under A.R. 97-4(9) and the principles of administrative res judicata, which this court does not, is supported by substantial evidence and free from material legal error.

### CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner.  <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: 3/30/09

CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

---

cannot relitigate those findings now.

12

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

IN THE CASE OF                CLAIM FOR

Period of Disability and Disability Insurance
Benefits

Jose Pazos, Jr.
(Claimant)

_____

(Wage Earner)                  (Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

On July 30, 2004, the claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning January 28, 2002. The claim was denied initially on October 23, 2004, and upon reconsideration on January 21, 2005. Thereafter, the claimant filed a timely written request for hearing on February 11, 2005 (20 CFR 404.929 et seq.).

The claimant appeared and testified at a hearing held on September 28, 2006, in Pasadena, CA. Also appearing and prepared to testify were Joseph E. Jensen, M.D., a medical expert, and Elizabeth G. Brown-Ramos, a vocational expert. The claimant testified with the assistance of a Spanish-language interpreter. The claimant is represented by James Shea, an attorney.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2007. Thus,

40

See Next Page

EXHIBIT 1

Jose Pazos, Jr.

the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, I conclude that the claimant was "disabled" within the meaning of the Social Security Act from January 28, 2002 through January 31, 2005. On February 1, 2005, medical improvement occurred that is related to the ability to work, and the claimant has been able to perform substantial gainful activity from that date through the date of this decision. Thus, the claimant's disability ended on February 1, 2005.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and

41

See Next Page

EXHIBIT

Jose Pazos, Jr. ▓▓▓▓▓▓▓▓▓▓▓

meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

If the claimant is found disabled at any point in the process, I must also determine if his disability continues through the date of the decision. In making this determination, I must follow an eight-step evaluation process (20 CFR 404.1594). If I can make a decision at a step, the evaluation will not go on to the next step.

At step one, I must determine if the claimant is engaging in substantial gainful activity. If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled (20 CFR 404.1594(f)(1)).

At step two, I must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). If the claimant does, his disability continues (20 CFR 404.1594(f)(2)).

42

See Next Page



MAR-06-2007  07:34        SSA EL MONTE                        626 2882652      P.012

EXHIBIT NO. 81A
PAGE: 10 OF 15

Page 4 of 9

Jose Pazos, Jr. (███████)

At step three, I must determine whether medical improvement has occurred (20 CFR 404.1594(f)(3)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings (20 CFR 404.1594(b)(1)). If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step.

At step four, I must determine whether medical improvement is related to the ability to work (20 CFR 404.1594(f)(4)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 404.1594(b)(3)). If it does, the analysis proceeds to the sixth step.

At step five, I must determine if an exception to medical improvement applies (20 CFR 404.1594(f)(5)). There are two groups of exceptions (20 CFR 404.1594(d) and (e)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

At step six, I must determine whether all the claimant's current impairments in combination are severe (20 CFR 404.1594(f)(6)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

At step seven, I must assess the claimant's residual functional capacity based on the current impairments and determine if he can perform past relevant work (20 CFR 404.1594(f)(7)). If the claimant has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step.

At the last step, I must determine whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience (20 CFR 404.1594(f)(8)). If the claimant can perform other work, he is no longer disabled. If the claimant cannot perform other work, his disability continues. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

43

After careful consideration of the entire record, I make the following findings:

...ured status requirements of the Social Security Act as of

EXHIBIT

Jose Pazos, Jr. 

EXHIBIT NO. 81A
PAGE: 11 OF 15

Exhibit 19D supports this finding.

2.   The claimant has not engaged in substantial gainful activity since January 28, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

There is no affirmative evidence that the claimant has worked since the alleged onset date. The claimant denies working during the period in question (Testimony of claimant). Earnings records are consistent with the claimant's account.

3.   At all times relevant to this decision, the claimant has had the following severe impairment: tear of the right rotator cuff, status-post arthroscopic surgery.

4.   From January 28, 2002 through January 31, 2005, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

5.   After careful consideration of the entire record, I find that, from January 28, 2002 through January 31, 2005, the claimant had the following residual functional capacity:

The claimant was able to lift up to ten pounds occasionally and lesser amounts frequently. The claimant could stand and walk for six hours of an eight-hour day, and sit for six hours per day. He was unable to operate arm controls on the right.

Mr. Pazos was unable to climb ladders, ropes, and scaffolds. He was able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally.

The claimant was precluded from reaching in all directions, handling, and fingering with the right upper extremity.

The claimant needed to avoid work involving heights, dangerous moving machinery, or similar hazards.

The claimant was not able to work on a regular and continuous basis due to due to pain, fatigue, the side effects of medication, the need for intensive medical treatment, and the normal recovery periods from surgeries and other medical procedures.

From January 28, 2002 through January 31, 2005, the claimant's statements concerning the limiting effects of his symptoms are generally credible.

**44**

See Next Page

EXHIBIT

Jose Pazos, Jr. ▮▮▮▮▮▮▮                                    Page 6 of 9

In making this determination, I considered the functional assessments of the State Agency medical consultants (Exhibit 8F) as expert medical opinion from non-examining sources (Social Security Ruling 96-6p). However, I afforded little weight to these assessments, and adopted a more restrictive residual functional capacity, for several reasons.

I had the opportunity to review the entire record, and therefore had a more complete picture of the claimant's medical history and treatment. In contrast, the consultant/s did not have the opportunity to review Exhibits 9F through 12F. As a result, they lacked evidence essential to accurately assess the claimant's physical limitations. Accordingly, I have given the DDS assessments little weight, and have adopted a more restricted residual functional capacity.

Further, I carefully considered the credibility of the claimant's allegations. I scrutinized the record for inconsistencies and evidence of exaggeration or feigning. I found the claimant's statements regarding the alleged limitations to be sincere and believable. I detected no material inconsistencies or indications of malingering. The claimant has a good work record. Accordingly, I find that the claimant's account of symptoms is credible. Having found this, I cannot accept the DDS determinations to the contrary, which failed to account for the claimant's credibility.

**6.    From January 28, 2002 through January 31, 2005, the claimant was unable to perform past relevant work (20 CFR 404.1565).**

~~The claimant has past relevant work as a machinist, a medium, semiskilled occupation. The claimant was unable to perform more than sedentary-level exertion. Accordingly, the claimant was unable to perform past relevant work.~~

**7.    The claimant was born on October 4, 1954 and was 47 years old on the alleged disability onset date, which is defined as a younger individual age 45–49 (20 CFR 404.1563).**

**8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.    The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from January 28, 2002 through January 31, 2005 (20 CFR 404.1568).**

The claimant's skills would only transfer to occupations that require bimanual dexterity. The claimant had limited use of the right arm during this period.

**10.  From January 28, 2002 through January 31, 2005, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that**

45

See Next Page

EXHIBIT

MAR-06-2007 07:35      SSA EL MONTE                    626 2882652    P.015

Jose Pazos, Jr.                                              Page 13 of 15
                                                        EXHIBIT NO. B1A
                                                        PAGE: 13 OF 15

existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).

When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

From January 28, 2002 through January 31, 2005, if the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21.

However, the additional limitations narrowed the range of work the claimant could have performed to the extent that a finding of "disabled" is appropriate under the framework of this rule. Social Security Rulings support this conclusion.

SSR 83-10 provides that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."

SSR 83-12 expands on this rule:

> Experience with persons who have lost the use of an upper extremity has shown that their potential occupational base is between the occupational bases for Table No. (sedentary work) and Table No.2 (light work). While individuals with this impairment have been known to perform selected occupations at nearly all exertional levels, the total number of occupations within their RFC's is less than the number represented by a full or wide range of light work. These individuals would generally not be expected to perform sedentary work because most unskilled sedentary jobs require good use of both hands.

SSR 83-14 further indicates that:

> *Sedentary exertion combined with a nonexertional impairment.* Example 1 of section 201.00(h) in Appendix 2 illustrates a limitation to unskilled sedentary work with an additional loss of bilateral manual dexterity that is significant and, thus, warrants a conclusion of "Disabled." (The bulk of unskilled sedentary jobs requires bilateral manual dexterity.)

**46**

See Next Page



Jose Pazos, Jr.

Thus, the claimant was unable to perform a significant number of jobs during the period in question.

**11.  The claimant was under a disability, as defined by the Social Security Act, from January 28, 2002 through January 31, 2005 (20 CFR 404.1520(g)).**

**12.  Medical improvement occurred as of February 1, 2005, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).**

The claimant has stipulated to this point.  The stipulation is consistent with the medical evidence showing that the claimant has recovered from the initial surgery.

**13.  Beginning on February 1, 2005, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).**

The claimant has stipulated to this finding.

**14.  After careful consideration of the entire record, I find that, beginning on February 1, 2005, the claimant has had the residual functional capacity to perform at least a range of light work.**

The claimant has stipulated to this finding.

**15.  The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(i)).**

In comparing the above residual functional capacities, I find that the claimant's functional capacity for basic work activities has increased.  The claimant agrees.

**16.  Beginning on February 1, 2005, the claimant has been unable to perform past relevant work (20 CFR 404.1565).**

The claimant remains unable to perform medium work or work requiring use of both upper extremities more than occasionally.

47

See Next Page



Jose Pazos, Jr. (

17.  Beginning on February 1, 2005, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

18.  Beginning on February 1, 2005, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

Beginning on February 1, 2005, if the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18.  However, the additional limitations have little or no effect on the occupational base of unskilled medium work. A finding of "not disabled" is therefore appropriate under the framework of this rule.

The claimant has stipulated that he is able to perform a significant number of jobs.

19.  The claimant's disability ended on February 1, 2005 (20 CFR 404.1594(f)(8)).

---

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on July 30, 2004, the claimant was disabled under sections 216(i) and 223(d) of the Social Security Act, beginning on January 28, 2002 and ending on February 1, 2005.

Philip J. Simon
Administrative Law Judge

OCT 0 4 2006

Date

48



**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| Jose Pazos, Jr. | |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

The claimant previously applied for Disability Insurance Benefits on July 30, 2004. The claim was denied initially and on reconsideration. The claimant timely requested a Hearing before an Administrative Law Judge and on October 4, 2006, Administrative Law Judge Philip J. Simon issued a partially favorable decision. Judge Simon found that the claimant was disabled from January 28, 2002 through January 31, 2005 (see Exhibit B-1A, p. 14). Judge Simon further found that, as of February 1, 2005, the claimant experienced medical improvement and the claimant stipulated to this finding (see Exhibit B-1A, p. 14). Judge Simon found that, as February 1, 2005, the claimant retained the residual functional capacity to perform at least the full range of light work (Exhibit B-1A, p. 14). Given the claimant's residual functional capacity as of February 1, 2005, Judge Simon found that work exists in significant numbers that the claimant could perform and he was no longer disabled; the claimant also stipulated that he was able to perform a significant number of jobs (Exhibit B-1A, p. 15). There is no evidence that the claimant requested review of Judge Simon's decision. Accordingly, the decision remains final and binding and, for the purposes of the claimant's current Title II claim, the issue of disability through October 4, 2006 is res judicata.

On February 1, 2007, the claimant filed a second Title II application for a period of disability and Disability Insurance Benefits. The claimant also filed a Title XVI application for Supplemental Security Income disability payments on February 1, 2007. In both applications, the claimant alleged disability beginning February 1, 2005. The claims were denied initially on May 25, 2007, and upon reconsideration on July 26, 2007. Thereafter, the claimant filed a timely written request for hearing on August 16, 2007 (20 CFR 404.929 et seq. and 416.1429 et seq.). The claimant appeared and testified at a hearing held on February 25, 2008, in Pasadena, California. Gail L. Maron, a vocational expert, also appeared and testified at the hearing. The claimant testified with the assistance of a Spanish language interpreter. The claimant is represented by James P. Shea Esq., an attorney.

While the claimant alleges disability beginning February 1, 2005, the period currently at issue before the undersigned Administrative Law Judge begins October 5, 2006, the day after the date Judge Simon issued his decision.

4

See Next Page


EXHIBIT 2

Jose Pazos, Jr. ▉▉▉▉▉▉▉                                                'age 2 of 10

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death, or that has lasted, or ca be expected to last, for a continuous period of not less than twelve months.

With respect to the claim for a period of disability and Disability Insurance Benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2010. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and Disability Insurance Benefits.

After careful consideration of all the evidence, the Administrative Law Judge concludes that the claimant has not been under a disability within the meaning of the Social Security Act at any time from February 1, 2005 through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the Administrative Law Judge must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

The Administrative Law Judge's evaluation of the evidence from the second to the fifth step of the sequential evaluation is to some extent directed by a relevant Social Security ruling. In September 1997, the Social Security Administration acquiesced in the decision of the Ninth Circuit Court of Appeals in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). Acquiescence Ruling 97-4(9) relates to disability cases in which an Administrative Law Judge made a final

5

See Next Page


EXHIBIT

Jose Pazos, Jr. (                                                          Page 3 of 10

decision on a prior disability claim. The court decided that findings of the claimant's residual functional capacity, education, and work experience are "entitled to some *res judicata* consideration." Therefore, in deciding subsequent disability claims that arise under the same title of the Social Security Act, adjudicators must adopt certain findings from the final decision on the prior claim, which findings include residual functional capacity, education, and work experience (Acquiescence Ruling 97-4(9)).

A claimant may rebut the presumption of "continuing non-disability" if he establishes a "changed circumstance" (*id.*). Examples of a "changed circumstance" include a change in age category, an increase in the severity of the claimant's impairments, a new impairment, or a change in the criteria for determining disability (*id.*).

At step two, the Administrative Law Judge must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the Administrative Law Judge must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the Administrative Law Judge must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the Administrative Law Judge must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the Administrative Law Judge must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual

6

See Next Page



Jose Pazos, Jr. <span style="background:black">▮▮▮▮▮▮</span>                                          Page 4 of 10

functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the Administrative Law Judge must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

**1.   The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.**

**2.   The claimant has not engaged in substantial gainful activity since October 5, 2006 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

There being no evidence to the contrary, the Administrative Law Judge finds that the claimant has not engaged in substantial gainful activity at any time since October 5, 2006, the first day of the period currently before the Administrative Law Judge.

**3.  The claimant has the following severe combination of impairments: a history of tear of the rotator cuff of the right shoulder, status-post arthroscopic surgery (20 CFR 404.1520(c) and 416.920(c)).**

Records from El Monte Comprehensive Health Center indicate that the claimant twisted his left ankle and sustained an ankle sprain in January 2007 (Exhibit B-1F, p. 8; Exhibit B-9F, pp. 15-16).  X-rays revealed a fracture of the distal fibula (Exhibit B-1F, p. 24; *also see* Exhibit B-4F, p. 4).  The claimant was treated at the Los Angeles County-USC Healthcare Network Orthopedic Clinic for approximately six weeks (Exhibit B-4F).  In March 2007, an examining orthopedist described the claimant's fracture as "stable" and the claimant was prescribed a supportive boot (Exhibit B-4F, p. 2).  While the claimant was scheduled to return to the orthopedic clinic in April 2007, the Administrative Law Judge finds no evidence that the claimant returned for the recommended treatment.  The Administrative Law Judge notes that when the claimant was treated at Los Angeles County-USC Healthcare Network July and August 2007 for other conditions, he did not complain of or seek treatment for left ankle pain (Exhibit B-9F, pp. 8-9,

7

See Next Page



Jose Pazos, Jr.                                                      Page 5 of 10

12).  The Administrative Law Judge further notes that no abnormalities of the claimant's left
ankle were noted during those examinations (*id.*).  In a November 2007 follow-up examination,
the claimant reported having left ankle pain only "on and off" (Exhibit B-9F, p. 5).  An
examiner noted some tenderness of the left ankle, but no swelling or other abnormalities (Exhibit
B-9F, p. 5).  A follow-up x-ray was interpreted as suggestive of an old avulsion fracture (*see*
Exhibit B-9F, p. 23).  At that time, the claimant was diagnosed with only a "history" of left distal
fibula fracture (Exhibit B-9F, p. 5).

The DDS physician, Dr. Dann, opined that the non-displaced fracture was not expected to be
severe for twelve months (Exhibit B-6F, p. 2; *also see* Exhibit B-7F, p. 2).  The Administrative
Law Judge accepts the opinion of the DDS physician and finds that the claimant's left ankle
fracture did not persist for twelve consecutive months.

While the claimant was treated for fungal and/or allergic dermatitis in July and August 2007 and
again in February 2008, there is no evidence that either of these conditions persisted for any
twelve-consecutive-month period (Exhibit B-9F, p. 2; Exhibit B-9F, pp. 8-9, 13).

Because the claimant failed to establish a new impairment or "changed circumstance," the
Administrative Law Judge applies Acquiescence Ruling 97-4(9) to the facts of this case and
adopts certain findings from the final decision on the prior claim.  Consistent with the
Administrative Law Judge's finding, the DDS physicians also found no changed circumstance
and applied the Chavez Acquiescence Ruling (*see* Exhibit B-7F; Exhibit B-8F).

**4.   The claimant does not have an impairment or combination of impairments that meets
or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,
Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The Administrative Law Judge relies on the opinions of the State Agency medical consultants
and finds that the claimant's impairments do not meet or equal the severity of a listed impairment
(Exhibit B-7F; Exhibit B-8F).  In addition, the State Agency physicians offered a medical source
statement not compatible with equivalence (*also see* Exhibit B-6F).

On the question of equivalence in general, under Social Security Ruling 96-6p, the opinions of
the State Agency physicians satisfy the evidentiary requirement for expert evidence on the issue
of equivalence, and support the finding of non-equivalency.

In looking independently at the record as a whole, the Administrative Law Judge sees nothing to
indicate that the combination of impairments produces a listing-level situation.  This is not a case
involving a condition not listed in Appendix 1.  Further, the Administrative Law Judge sees no
indication that this is a situation in which one or more findings required to meet a listing is
missing, but for which other medical findings of equal or greater significance are present in the
record.  The record does not indicate impairments of that magnitude.  Further the claimant has
not come forward with evidence suggesting a listing-level condition or presented a theory
pointing the way to equivalence.  As a result, the Administrative Law Judge did not find that
either of the two situations specified in Social Security Ruling 96-6p applies here; consequently,
he did not obtain testimony from a medical expert.

8

See Next Page



Jose Pazos, Jr. ██████████                                    Page 6 of 10

Accordingly, the Administrative Law Judge accepts the assessments noted above, and finds that none of the claimant's medically determinable impairments meet or equal a listing.

5.    After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform the full range of light work (20 CFR 404.1567(b) and 416.967(b)).  The claimant can lift twenty pounds occasionally, ten pounds frequently, stand and/or walk six hours and sit six hours in an eight-hour workday.

In making this finding, the Administrative Law Judge has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  The Administrative Law Judge has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

As mentioned, the claimant has not established a changed circumstance and his only medically determinable impairment that has persisted twelve consecutive months is his history of right shoulder rotator cuff tear, status post arthroscopic repair.  Records from El Monte Comprehensive Health Center indicate that the claimant was treated with oral medication for his right shoulder complaints after January 2005 (Exhibit B-1F, pp. 12, 14, 16).  In July 2005, an x-ray of the claimant's right shoulder revealed no abnormalities (Exhibit B-1F, p. 25).  Since October 2006, the claimant has only occasionally sought treatment for right shoulder pain (Exhibit B-1F; Exhibit B-9F).  In November 2006, examination of the claimant's right shoulder revealed some tenderness with normal sensation and motor strength of the right upper extremity (see Exhibit B-1F, p. 3; also see Exhibit B-9F, p. 20).  The claimant was diagnosed with right shoulder pain and encouraged to perform right shoulder exercises (id.).  In January 2007, the claimant did not complain of or allege any right shoulder symptoms (Exhibit B-1F, pp. 8-9; Exhibit B-9F, pp. 15-17).  In July 2007, the claimant presented to the Los Angeles County-USC Healthcare Network facility for a refill of his pain medications (Exhibit B-9F. p. 12).  At that time, no positive findings of the right shoulder was noted (Exhibit (Exhibit B-9F, pp. 12-13).  In August 2007, the claimant did not complain of or seek treatment for shoulder pain (Exhibit B-9F, p. 9).  Again, no positive signs of the right shoulder were noted on examination (id.).  In addition, the Administrative Law Judge finds no evidence that the claimant complained of or sought treatment for right shoulder pain in November 2007 or February 2008 and again, no positive findings of the right shoulder were noted (Exhibit B-9F, pp. 2, 5).

The Administrative Law Judge applies Acquiescence Ruling 97-4(9) and adopts Judge Simon's finding that the claimant retains the residual functional capacity to perform at least light work.  This finding is consistent with the DDS physicians finding that the claimant can perform the full range of light work (see Exhibit B-6F; Exhibit B-8F) and there is no medical source opinion to the contrary.

In considering the claimant's symptoms, the Administrative Law Judge must follow a two-step process in which it must first be determined whether there is an underlying medically

9

See Next Page



MAR-27-2008  14:37        SSA/ODAR PASADENA                    1 626 793 3080    P.011/046

Jose Pazos, Jr.                                     Page 7 of 10

determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the Administrative Law Judge must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the Administrative Law Judge must make a finding on the credibility of the statements based on a consideration of the entire case record.

After considering the evidence of record, the Administrative Law Judge finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The Administrative Law Judge finds that the claimant is not entirely credible for several reasons.

The claimant appears to overstate his symptoms and limitations, and this reduces his credibility.

Mr. Pazos asserts that he continues to be disabled due to right shoulder pain (testimony). The Administrative Law Judge notes, however, that the claimant has not consistently complained of or sought treatment for shoulder pain as discussed in the review of the medical evidence (*also see* Exhibit B-1F; Exhibit B-9F). While the claimant testified that he has not undergone further right shoulder surgery because he is afraid something will go wrong, the Administrative Law Judge finds no evidence that further surgical intervention has been recommended (Exhibit B-1F; Exhibit B-9F). As mentioned above, the most recent right shoulder x-ray revealed no abnormalities and the Administrative Law Judge finds no evidence that the claimant has been referred for further diagnostic testing.

Mr. Pazos also alleges disability due in part the left ankle pain. The claimant testified that he is unable to stand and/or walk for more than twenty minutes due to left ankle pain and swelling. But the Administrative Law Judge notes that the claimant has not consistently complained of left ankle pain to his treating doctors. The longitudinal record indicates that the claimant stopped attending the Los Angeles County-USC Healthcare Network orthopedic clinic in March or April 2007 (Exhibit B-4F). As discussed at the second step of the sequential evaluation, the claimant's left ankle fracture appears to have resolved within twelve months. There is no objective evidence to the contrary.

The claimant's credibility is reduced by his failure to comply with prescribed treatment. In March 2007, a Los Angeles County-USC Healthcare Network orthopedic specialist noted the claimant's history of "noncompliance" with treatment (Exhibit B-4F, p. 2). The claimant has missed a number of medical appointments and this is inconsistent with his assertion that he is

10

See Next Page



MAR-27-2008  14:38      SSA/ODAR PASADENA                    1 626 793 3080      P.012/046

Jose Pazos, Jr.⬛⬛⬛⬛⬛                                              Page 8 of 10

"disabled." In November 2007, the claimant refused to take recommended laboratory tests (Exhibit B-9F, p. 5). Records from El Monte Comprehensive Health Center indicate that the claimant also missed a number of medical appointments (see Exhibit B-1F, p. 5). It is reasonable to expect that if the claimant truly experiences disabling pain symptoms, he would follow prescribed treatment.

In sum, the above residual functional capacity assessment is supported by the longitudinal record and the medical source opinions of the DDS physicians.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The vocational expert identified the claimant's has past relevant work as that of a Machinist (DOT 600.280-022). The vocational expert testified that the occupation of machinist is generally performed at the medium exertion level and is considered a skilled occupation.

Because the claimant is limited to the performance of light work, the Administrative Law Judge finds that the claimant is unable to perform his past relevant work.

**7.   The claimant was born on October 4, 1954 and was fifty-one years old on October 5, 2006, the day after Judge Simon issued his partially favorable decision. The claimant is currently fifty-three years old. For the purposes of this decision, he is considered an individual who is "closely approaching advanced age" (20 CFR 404.1563 and 416.963).**

**8.   The claimant has at least a high school education in a foreign country and he is able to communicate in English (20 CFR 404.1564 and 416.964).**

Mr. Pazos testified that he can speak and read English, but he cannot write in English.

**9.   The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).**

The vocational expert testified that the claimant's past relevant work as a machinist was skilled with a specific vocational preparation (SVP) code of 7 and required the following skills: operating machines, reading blueprints and measuring dimensions.

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566, 404.1568(d), 416.960(c), 416.965, and 416.968(d)).**

In determining whether a successful adjustment to other work can be made, the Administrative Law Judge must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or

See Next Page



Jose Pazos, Jr ▓▓▓▓▓                                           Page 9 of 10

"not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations (SSRs 83-12 and 83-14). If the claimant has solely non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15.

The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills. The vocational expert testified that representative occupations such an individual could perform include: Assembly Line Inspector (DOT 709.684-013), with approximately 1,000 jobs locally, and 16,000 nationally, and a General Inspector (DOT 609.684-010), with approximately 1,000 jobs locally, and 16,000 jobs nationally.

The vocational expert further testified that without transferable skills, the individual could perform the light, unskilled occupations of Housekeeping Cleaner (DOT 323.687-014), with approximately 7,000 jobs locally, and 184,000 jobs nationally, Fast Food Worker (DOT 311.472-010), with approximately 11,000 jobs locally, and 390,000 jobs nationally, and Assembler (DOT 729.687-010), with approximately 19,000 jobs locally, and 100,000 jobs nationally.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the Administrative Law Judge concludes that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

Because the claimant can perform the full range of light work Medical-Vocational Rule 202.15 directs a finding of "not disabled." The vocational expert's testimony corroborates the rule and Judge Simon's finding.

**11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from October 5, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

### DECISION

Based on the application for a period of disability and Disability Insurance Benefits filed on February 1, 2007, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

12

See Next Page



Jose Pazos, Jr.                                     Page 10 of 10

Based on the application for Supplemental Security Income disability payments filed on February 1, 2007, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

_____

David J. Agatstein
Administrative Law Judge

MAR 2 7 2008
_____
Date

13

EXHIBIT